## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **123 EXTERIORS, INC.** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 17-4337** |
| **v.** | : | |
| | : | |
| **NORTH STAR EXTERIORS, LLC,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                    AUGUST 1, 2018

# MEMORANDUM OPINION

## INTRODUCTION

Before this Court is a motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) filed by Defendants Jeffrey Hopkins ("Defendant Hopkins") and North Star Exteriors, LLC ("Defendant North Star"), (collectively, "Moving Defendants"). The basis for the motion centers on Moving Defendants' reliance on a forum selection provision in the employment agreement between 123 Exteriors, Inc. ("Plaintiff") and Defendant Hopkins, which provides that any claim arising out of, or in connection to, the employment agreement is subject to the sole jurisdiction of the state courts of the State of Missouri. [ECF 27]. Moving Defendants also seek dismissal on the grounds that Plaintiff has failed to adequately plead several of the claims. Plaintiff has opposed the motion. [ECF 28].

The issues raised in the motion have been fully briefed and are ripe for consideration. For the reasons stated herein, Moving Defendants' motion to dismiss is granted, in part, and denied in part.

**BACKGROUND**

When ruling on Moving Defendants' motion to dismiss, this Court accepts as true the

relevant allegations in Plaintiff's complaint and attachments. Briefly, these facts are as follows:

Plaintiff is an Illinois corporation registered to do business in Missouri with a principal place of business located in St. Louis County, Missouri. (Compl. ¶1). Defendant Hopkins is a resident of Pennsylvania. (*Id*. at ¶3). Defendant North Star is a Pennsylvania limited liability company that is owned and operated by Defendant Hopkins, with its principal place of business located in Ottsville, Pennsylvania. (*Id*. at ¶2). According to Plaintiff, Defendant Hopkins covertly formed North Star on January 29, 2016, while still employed by Plaintiff, with the intent to defraud, gain an economic advantage over and unlawfully compete directly with Plaintiff. (*Id*. at ¶58). Defendant North Star is engaged in virtually an identical business and offers the identical services as Plaintiff. (*Id*. at ¶61).

Plaintiff is in the business of providing exterior insurance restoration in the States of Missouri, Illinois, Iowa, Nebraska, Ohio, Pennsylvania, and Wisconsin. (*Id*. at ¶11). Defendant Hopkins began working for Plaintiff in April, 2010, as a sales representative in Plaintiff's office located in Allentown, Pennsylvania. (*Id*. at ¶12). After considerable development, training, and investment by Plaintiff, Hopkins was promoted to General Manager of the Pennsylvania office. (*Id*. at ¶13).

As a General Manager, Defendant Hopkins' duties and responsibilities included, *inter alia*, oversight of the overall day-to-day operations and management of the Pennsylvania office, hiring, training, and managing sales representatives/agents, customer service, interacting with Plaintiff's customers, project management, financial success of the office, executing Plaintiff's business methods and operations, deriving and implementing marketing and sales strategies, attending regular meetings related to Plaintiff's confidential business model, strategic planning, competitive intelligence, strategic plans to grow and improve business in the Pennsylvania market, and maintaining continuous customer and referral relationships and goodwill on Plaintiff's behalf. (*Id*. at ¶16). In order for Defendant Hopkins to perform these job duties, Plaintiff gave Defendant Hopkins access to and allowed him use of Plaintiff's confidential, competitively-valuable information including, *inter alia*, identification of Plaintiff's actual customers and key contacts, training and instructional materials, marketing and sale strategies, promotional materials, bidding techniques and procedures, Plaintiff's established pipeline of "qualified" customers and key contacts, customer preferences, identification of referral sources, service and business manuals, financial records (including vendor relationships and agreements, fixed and variable costs, profit margins) related to the overall operations and management of Plaintiff's business, all of which allegedly provide Plaintiff a significant competitive advantage in the marketplace for the services it

provides. (*Id*. at ¶17). Plaintiff alleges that this information constitutes confidential and/or proprietary information. (*Id.*).

Defendant Hopkins entered into an Employment Agreement and Agreement Not to Compete (the "Employment Agreement") with Plaintiff. (*Id*. at ¶18). The Employment Agreement contains a confidentiality provision which prohibits the disclosure of Plaintiff's trade secrets and confidential information, and reads as:

> General Manager will keep in strict confidence, and will not, directly or indirectly at any time during or after his employment with the Company, disclose, furnish, disseminate, make available, or except in the course of performing his duties of employment hereunder or as may be required by law, use any trade secrets or confidential business and technical information of the Company, its customers or vendors, without limitation as to when or how General Manager may have acquired such information.

> Such confidential information shall include, without limitation, the Company's unique selling methods and business techniques, training, service and business manuals, promotional materials, training courses and other training and instructional materials, vendor and product information, customer and prospective customer lists, other customer and prospective customer information and other business information, to the extent not otherwise generally known in the marketplace in which the Company competes. General Manager specifically acknowledges that all such confidential information, whether reduced to writing, maintained on any form of electronic media, or maintained in the mind or memory of General Manager and whether compiled by the Company, and/or General Manager, derives independent economic value from not being readily known to or ascertainable by proper means by others who can obtain economic value from its disclosure or use, that reasonable efforts have been made by the Company to maintain the secrecy of such information, that such information is the sole property of the Company and that any retention and use of such information by General Manager during his employment with the Company (except in the course of performing his duties and obligations hereunder) or after the termination of his employment shall constitute a misappropriation of the Company's trade secrets.

(*Id*. at ¶19). The Employment Agreement also contained non-competition and non-solicitation restrictive covenants. (*Id*. at ¶¶20-22). It also contained the following venue selection clause:

> <u>Jurisdiction</u>. The courts of the State of Missouri shall have exclusive jurisdiction to settle any dispute arising out of or in connection with this

Agreement (including a dispute regarding the existence, validity or termination of this Agreement). (*See* ECF 1-1 at p. 8).

On April 6, 2016, Defendant voluntarily resigned and misrepresented to Plaintiff that he was going to work for his mother-in-law in an unrelated business and would fully honor the terms of his Employment Agreement. (*Id*. at ¶25). Based on Defendant Hopkins' re-affirmation of the terms of his Employment Agreement, Plaintiff allowed Defendant Hopkins to continue his employment for a two week period. (*Id*.). On April 14, 2016, Plaintiff was informed by a former sales representative that Defendant Hopkins had formed an exterior restoration business and was actively competing against Plaintiff. (*Id*. at ¶26). Plaintiff then discovered that Defendant Hopkins, while still employed and receiving compensation from Plaintiff, had placed signs for his directly competitive business, North Star Exteriors, at numerous locations within fifty miles of Plaintiff's Pennsylvania office, including in the yards of Plaintiff's actual customers, prospective customers, and business leads. (*Id*. at ¶27). Upon learning of this, Plaintiff immediately terminated Defendant Hopkins' employment. (*Id*. at ¶28).

Plaintiff alleges that since Defendant Hopkins left its employment, Defendant Hopkins, in conjunction with the other defendants, including North Star, has unlawfully misappropriated Plaintiff's confidential and proprietary information for financial gain in violation of the Defend Trade Secrets Act, 18 U.S.C. §1836, the Employment Agreement, and Pennsylvania common law.


**LEGAL STANDARD**

When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"

*Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

As noted, Moving Defendants seek dismissal of this entire action on the basis of a forum selection clause that appears in the employment agreement at issue between Plaintiff and Defendant Hopkins. In making this argument, Moving Defendants initially seem to misconstrue the legal effect of such a clause on a court's jurisdiction and/or on proper venue by arguing that the forum selection clause renders venue in this District wrong or improper. This argument has been rejected by the United States Supreme Court in *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 57 (2013).

In *Atlantic Marine*, the defendant moved to dismiss the suit, arguing that a forum-selection clause rendered venue in the filed district wrong and/or improper. *Id.* at 53. Rejecting this argument, the Supreme Court held that the existence of a forum-selection clause in a contract agreed to by the parties does not render venue "wrong" or "improper" if a party files an action in a venue different than the one selected in the clause. *Id.* at 55, 57. Instead, "venue is proper so long as the requirements of [the federal venue statute] are met, irrespective of any forum-selection clause . . . ." *Id.* at 57. "If the federal venue statutes establish that suit may be brought

in a particular district, a contractual bar cannot render venue in that district 'wrong.'" *Id.* at 58. Thus, this action can only be dismissed for wrong or improper venue if it would have been improper to bring this action in this District pursuant to the federal venue statute.

Notably, apart from their argument with respect to the forum-selection clause, Moving Defendants do not argue that venue is improper under the applicable venue statute. Regardless, venue for this matter is proper in the Eastern District of Pennsylvania. Under the general venue statute, an action based on diversity of citizenship is properly filed in a judicial district where any defendant resides, if all defendants reside in the same state, or a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. §1391(b). Here, all of the named defendants are alleged to be residents of Pennsylvania, and Plaintiff's claims are premised on facts that allegedly occurred in Pennsylvania. (*See*, *e.g.*, Compl. at ¶¶2-7). As such, venue is proper in this District.

This, however, does not end the inquiry. The *Atlantic Marine* Court also held that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." 571 U.S. at 60.[1] "A successful motion under *forum non conveniens* requires dismissal of the case." *Id.* at 66 n.8 (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). "[D]ismissal . . . works no injustice on the plaintiff," because such a plaintiff "has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause." *Id*.

Though Moving Defendants' motion does not specifically reference the doctrine of *forum non conveniens*, they rely in their brief on cases where that doctrine is the basis for the court's

---

[1]    As discussed more fully below, the forum selection clause at issue here provides for venue **only** in the state courts of Missouri, and not any federal court. As such, under *Atlantic Marine*, this matter cannot be transferred pursuant to §1404, but can only be dismissed. 571 U.S. at 66 n.8.

decision and make the straightforward argument that this action should be dismissed because of the forum-selection clause. This Court will, therefore, construe Moving Defendants' motion as one to dismiss for *forum non conveniens* as contemplated by *Atlantic Marine*. However, because only Plaintiff and Defendant Hopkins were party to the Employment Agreement containing the applicable forum selection clause at issue, and Moving Defendants have provided no legal basis under which Defendant North Star could either be bound by or benefit from the forum selection clause, this Court will only consider the motion to dismiss for *forum non conveniens* with respect to Defendant Hopkins.[2]

As outlined by the Supreme Court in *Atlantic Marine*, the doctrine of *forum non conveniens* "entail[s] the same balancing-of-interests standard" as 28 U.S.C. §1404(a), the section of the United States Code allowing for transfer of civil actions from one United States District Court or division of such court to another. 571 U.S. at 61. A motion to transfer venue under §1404(a) requires the Court to weigh various factors related to the convenience of the parties and to the public interest to decide whether transfer of venue is appropriate. *Id.* at 62; *see also id.* at 62 n.6 (enumerating some of the relevant private and public interest considerations). However, where there is a valid forum selection clause, the §1404(a) and *forum non conveniens* analyses change in three ways, two of which are relevant when the forum selection clause points to a non-federal forum.[3] *Id.* at 63. First, the weight ordinarily given to the plaintiff's choice of

---

[2]     While under limited circumstances, non-signatories to contracts can be bound by and/or benefit from forum selection clauses appearing in contracts between other parties, Moving Defendants have made no attempt to meet those limitations here. *See AAMCO Transmissions, Inc. v. Romano*, ___ F.3d ___ , 2014 WL 4105986, at *5 (E.D. Pa. Aug. 21, 2014).

[3]     "Courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Id.* at 61. The third change to the §1404(a) analysis concerns the carryover of choice-of-law rules from the transferor court to the transferee court. *Id.* at 63-64. Because this motion arises under the *forum non conveniens* doctrine and

venue — that is, the forum in which it filed the civil action — disappears and "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, the court should "deem the private-interest factors to weigh entirely in favor of the preselected forum" and "should not consider arguments about the parties' private interests." *Id.* at 64. Rather, the Court may only consider public interest factors. *See Amazon Produce Network, LLC v. NYK Line,* 2015 WL 5568386, at *2 (E.D. Pa. Sept. 21, 2015) (citing *Atlantic Marine*). "Because those [public interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atlantic Marine*, 571 U.S. at 64. "[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* at 63 (internal alteration omitted). In addition, the *Atlantic Marine* Court held that where the plaintiff defied the parties' forum-selection clause by filing in a non-chosen forum, as did Plaintiff here, the plaintiff "bear[s] the burden of showing that public-interest factors **overwhelmingly** disfavor a transfer." *Id.* at 67 (emphasis added). Consequently, as the party seeking to overcome an otherwise enforceable forum-selection clause, Plaintiff bears the burden of showing that the public-interest factors "overwhelmingly" weigh in favor of venue in this forum, as opposed to the state courts of Missouri.

In response to Defendant Hopkins' motion to dismiss with respect to the forum-selection clause, Plaintiff relies upon the recent decision of the Court of Appeals for the Third Circuit in *In re Howmedica Osteonics, Corp.*, 867 F.3d 390 (3d Cir. 2017) to argue that this matter, in its entirety, should remain in this District, despite the forum-selection clause clearly setting exclusive venue in the state courts of Missouri. Plaintiff's argument, however, is misplaced for

not §1404(a), making dismissal the only possible result of a successful motion, *id.* at 66 n.8, this change is irrelevant to the case at bar.

several reasons.  First, Plaintiff mistakenly contends that the forum-selection clause at issue allows venue in either the state or federal courts in Missouri.  It does not; rather, it clearly places venue *only* in the state courts of Missouri.  Specifically, the forum selection clause provides that: "The Courts of the State of Missouri shall have exclusive jurisdiction to settle any dispute arising out of or in connection with this Agreement . . . ."  The federal courts in Missouri are not "Courts *of the State of Missouri*."  *Cf., Collins v. Mary Kay, Inc*., 874 F.3d 176, 187 (3d Cir. 2017) (affirming dismissal of action filed in District of New Jersey under the doctrine of *forum non conveniens* where the forum-selection clauses at issue required litigation to be "submitted to the jurisdiction of the courts of the State of Texas . . . .").  As such, this Court cannot transfer this matter to the federal courts in Missouri under §1404(a) as a result of the forum-selection clause.  As noted, it can only dismiss the action. *Atlantic Marine*, 571 U.S. at 66 n.8.  In addition, *Howmedica* has no application here where the forum-selection clause requires venue only in the state courts of Missouri and not in the federal courts of Missouri.  At issue in *Howmedica* was "how district courts should apply *Atlantic Marine* where all defendants seek a transfer to one district under §1404(a) and where some, but not all, of those defendants are parties to forum-selection clause that designate different districts." *Howmedica*, 867 F.3d at 397.  Here, though this matter involves defendants who are party to the forum-selection clause at issue and defendants who are not party to the forum-selection clause, no party has sought a transfer to another federal district court pursuant to §1404(a).  Indeed, because the forum-selection clause at issue only allows for venue in the state courts of Missouri (and not the federal courts), no party to this litigation could seek transfer of this matter under §1404(a).  Therefore, the framework outlined in *Howmedica* is inapplicable.

With respect to consideration of the public-interest factors, Plaintiff, a Missouri corporation, argues only that these factors weigh in favor of adjudicating this matter, in its entirety, in this District because it would generally be more convenient to Defendant North Star. (*See* ECF 28 at pp. 7-8). In doing so, Plaintiff addresses only the private and public interests with respect to Defendant North Star, but not with respect to either Plaintiff or any of the other Defendants. Moreover, with respect to the public interest factors in particular, Plaintiff merely states that "the State of Pennsylvania has an interest in having local disputes in the locale in which the claim arose, *i.e.*, Pennsylvania." (*Id.*). This argument falls well short of meeting Plaintiff's burden under *Atlantic Marine* to show that the public factors "overwhelmingly disfavor" venue in the parties' chosen forum of the state courts of Missouri. Accordingly, because Plaintiff has not met its burden to overcome the forum-selection clause, Defendant Hopkins' motion to dismiss under the *forum non conveniens* doctrine is granted as to Defendant Hopkins only.[4] As noted, however, Defendant North Star has provided no legal argument or basis as to how it can also benefit from the forum selection clause at issue.

### *Count Two — Conversion*[5]

Defendant North Star seeks dismissal of the conversion claim asserted at Count Two based on the "law of the case" doctrine because a Missouri court previously dismissed a conversion claim against Defendant Hopkins for insufficient specificity. As argued by Plaintiff, however, the "law of the case" doctrine does not apply.

---

[4] All of the claims asserted against Defendant Hopkins arise out of or are connected to the Employment Agreement. As such, all of the claims are subject to the forum-selection clause.

[5] As set forth above, all claims against Defendant Hopkins are dismissed on the basis of the forum-selection clause. Though Moving Defendants, including Defendant Hopkins, seek dismissal of all claims on additional bases, the remainder of this Memorandum Opinion will only address these additional arguments for dismissal with respect to the claims asserted against Defendant North Star.

Although the Supreme Court has described the "law of the case [a]s an amorphous concept," "[a]s most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages *in the same case*." *Pepper v. United States*, 562 U.S. 476, 506 (2011) (emphasis added) (citations omitted). This doctrine "directs a court's discretion, it does not limit the tribunal's power." *Id.* The "[l]aw of the case rules have developed 'to maintain consistency and avoid reconsideration of matters once decided *during the course of a single continuing lawsuit*.'" *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (emphasis added) (citations omitted); *see also DeFranco v. Wolfe*, 387 F. App'x 147, 156 (3d Cir. 2010). The law of the case doctrine, while not binding, directs a court to avoid revisiting prior rules in subsequent stages of the same case absent some extraordinary circumstances. *Lambert v. Blackwell*, 387 F.3d 210, 236 n.10 (3d Cir. 2004). Thus, the law of the case doctrine "do[es] not apply between separate actions." *Daramy v. Attorney Gen. of U.S.*, 365 F. App'x 351, 354 (3d Cir. 2010) (citations omitted); *see also Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1214 (5th Cir. 1991) ("[The prior case] and the case before us are altogether separate proceedings, so law of the case is inapplicable.").

Under this governing law, the law of the case doctrine has no application here where Defendant North Star relies upon a decision by a Missouri state court in a separate action involving some, but not all of the parties and claims in this action. *See Boscov's Dep't Store, Inc. v. Lear Siegler, Inc.*, 1996 WL 626277, at *2 (E.D. Pa. Oct. 29, 1996) (rejecting law of the case argument where previous decision was issued in state court action and not in the same federal action). In addition, Defendant North Star was not a party to the Missouri litigation and therefore, this is the first litigation in which a claim for conversion has been asserted against it.

11

Defendant North Star's motion to dismiss Count Two premised on the law of the case doctrine is denied.

*Count One – Theft of Trade Secrets*

Defendant North Star also seeks dismissal of Plaintiff's theft of trade secrets claim (Count One) brought by Plaintiff under the Defend Trade Secrets Act (the "DTSA"), 18 U.S.C. §1832, *et seq*. The DTSA creates a private right of action for the misappropriation of trade secrets. 18 U.S.C. §1836(b)(1). Defendant North Star initially argues that Plaintiff's DTSA claim fails under "black letter law concerning retroactivity" because it is premised on facts and violations that allegedly occurred before the DTSA was enacted.[6] (*See* ECF 27-1 at p. 8). Notably, Defendant North Star cites no law to support such argument. Plaintiff counters that although Defendant Hopkins acquired and began using its trade secrets prior to the effective date of the DTSA, Defendant North Star's use continued afterwards, subjecting it to liability under the DTSA. This Court agrees.

The DTSA defines "misappropriation" as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;" or the "disclosure or use" of a trade secret without the consent of the owner. 18 U.S.C. §§1839(5)(A)–(B). As such, misappropriation, as defined in the DTSA, includes unauthorized "use," not just acquisition, of a trade secret. *Id*. at §1839(5)(B). Although the statute does not reach misappropriation occurring entirely before the May 11, 2016, enactment date, it has been widely interpreted to reach a defendant's continued use of trade secrets after the enactment date, even if the secrets were acquired earlier. *See, e.g.*, *Teva Pharm. USA, Inc. v. Sandhu*, 291 F.

---

[6]     The DTSA became effective on May 11, 2016. Pub. L. No. 114–153, § 2, 130 Stat. 376 (2016) (codified as amended at 18 U.S.C. §1831 *et seq.*).

Supp. 3d 659, 674-75 (E.D. Pa. 2018) (observing that "one who acquired and used a trade secret before enactment of the DTSA and continues to use it after enactment is liable"); *Quintiles IMS Inc. v. Veeva Sys. Inc.*, No. 17-177, 2017 WL 4842377, at \*4 (D.N.J. Oct. 26, 2017) (holding "allegations of pre-enactment acquisition of a trade secret coupled with post-enactment continued use are sufficient to sustain a claim under the [DTSA] at the motion to dismiss phase.") (citation omitted); *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, 2017 WL 1436044, at \*4 (N.D. Cal. Apr. 4, 2017) ("Nothing suggests that the DTSA forecloses a use-based theory [of misappropriation] simply because the trade secret being used was misappropriated before the DTSA's enactment."); *Brand Energy & Infrastructure Svcs., Inc.*, 2017 WL 1105648, at \*8 (E.D. Pa. Mar. 24, 2017) (finding "Congress clearly expressed its intent to apply the DTSA to continuing misappropriations that began prior to — but continued after — the DTSA's enactment."). This Court agrees with these other courts' analysis of the issue. Thus, one who acquired and used a trade secret before enactment of the DTSA *and* continues to use the trade secret after enactment of the DTSA is liable. *Brand Energy*, 2017 WL 1105648, at \*4 (citations omitted). To state a claim for a continuing misappropriation, a plaintiff must allege some act of misappropriation occurring on or after May 11, 2016. *See Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 338 (D. Del. 2017).

Throughout its complaint, Plaintiff alleges that Moving Defendants "have misappropriated and used" Plaintiff's confidential and proprietary information and trade secrets after Defendant Hopkins' employment with Plaintiff was terminated on April 14, 2016, one month before the DTSA's effective date. (*See* Compl. at ¶¶90, 91, 101, 115). Specifically, Plaintiff alleges that "Defendants have used and continue to use the Confidential/Proprietary Information and trade secrets without Plaintiff's consent" and "Plaintiff has conferred a benefit

on Defendants, who have used and continue to use the Confidential/Proprietary Information to compete directly against Plaintiff." (*Id*. at ¶¶101, 115). This Court finds that these allegations suffice to state a claim for acquisition, use, and continuing use of trade secrets under the DTSA. Therefore, Defendant North Star's motion to dismiss is denied on this ground.

Defendant North Star further argues that Plaintiff's DTSA claim must be dismissed because Plaintiff has insufficiently pled or identified the trade secrets that were misappropriated. Defendant North Star is mistaken as Plaintiff's allegations are sufficient to put Defendant North Star on notice of what Plaintiff alleges Defendant North Star misappropriated.

The DTSA defines a trade secret as information that: (a) the owner has taken reasonable means to keep secret; (b) derives independent economic value, actual or potential, from being kept secret; (c) is not readily ascertainable by proper means; and (d) others who cannot readily access it would obtain economic value from its disclosure or use. 18 U.S.C. §1839(3); *see also Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 675 (E.D. Pa. 2018). "[A] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Kewanee Oil v. Bicron Corp.*, 416 U.S. 470, 475 (1974). "The subject of a trade secret must be secret, and must not be of public knowledge or of a general knowledge in the trade or business." *Id.* Pennsylvania courts have universally found client/customer lists and profiles, and pricing information to be trade secrets when confidently maintained. *See Bohler v. Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 107 (3d Cir. 2001); *see also Robinson Elec. Supervisory Co. v. Johnson*, 154 A.2d 494, 496 (Pa. 1959) ("[C]ustomer lists and customer information . . . [are] highly confidential and constitute[ ] a valuable asset. Such data has been held to be property in the nature of a 'trade secret' for which an employer is entitled to

protection, independent of a non-disclosure contract."). Here, Plaintiff has identified such customer lists and information, amongst other confidential information, as the trade secrets that Moving Defendants misappropriated. (*See* Compl. at ¶17). As such, Plaintiff's misappropriation of trade secret claim adequately identifies its trade secrets with sufficient particularity to overcome Defendant North Star's motion. The motion is, therefore, denied.

### *Count Seven – Aiding and Abetting Breach of Duty of Loyalty[7]*

At Count Seven, Plaintiff asserts a claim against Defendant North Star for aiding and abetting the breach of the duty of loyalty. Defendant North Star argues that this claim should be dismissed because Plaintiff has not pled the existence of a fiduciary relationship between Plaintiff and Defendant Hopkins under Pennsylvania law. Presumably, Defendant North Star argues that, because there is no fiduciary relationship, Defendant North Star cannot be liable for aiding and abetting the breach of such duties.

As the Honorable Judge Baylson of this District recognized in *Certainteed Ceilings Corp. v. Aiken*, 2015 WL 410029, at *11 n.10 (E.D. Pa. Jan. 29, 2015), courts analyzing Pennsylvania law have reached differing conclusions as to which employees, if any, owe fiduciary duties to their employers. Some have broadly concluded that all employees owe their employers fiduciary duties, while others have concluded that only officers and directors owe such duties. *Id.* This apparent conflict, however, appears to have arisen with respect to whether certain employees automatically owe fiduciary duties merely on account of their position within their respective companies. *Id.* When titles are put aside, Pennsylvania law imposes fiduciary duties where there is a confidential relationship between the parties. *See e.g., Weiley v. Albert Einstein*

---

[7] Moving Defendants also seek dismissal of the related claims for breach of loyalty and breach of fiduciary duty asserted against Defendant Hopkins only at Counts IX and X of the complaint. Because these claims arise out of and/or are connected to the Employment Agreement, they are subject to the forum selection clause and thus dismissed for the reasons set forth above.

*Medical Center*, 51 A.3d 202, 218 (Pa. Super. Ct. 2012) (citing *Basile v. H&R Block, Inc.*, 777 A.2d 95, 102 (Pa. Super. Ct. 2001)). "The essence of [a confidential] relationship is trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other." *Basile*, 777 A.2d at 101. A confidential relationship may exist where one side justifiably reposes its trust in the other. *Id.* Here, Plaintiff has alleged that Defendant Hopkins, in his position as General Manager, was privy to a host of confidential information about Plaintiff's "customers, prospective customers, internal operations, sales techniques, production, revenues, profits, and material costs . . . ." (Compl. at ¶182). Plaintiff has also alleged that it placed "a special trust in Defendant Hopkins that he would maintain the secrecy of its confidential information and not disclose it to any other party or misuse it." (*Id.* at ¶184). These allegations, accepted as true, are sufficient to give rise to a fiduciary relationship between Plaintiff and Defendant Hopkins. Therefore, Defendant North Star's motion to dismiss the breach of fiduciary duty claims is denied.

### *Counts Five and Six – Tortious Interference Claims*

At Counts Five and Six, Plaintiff asserts claims for tortious interference with existing and prospective contractual relations. Defendant North Star has moved to dismiss these claims on the basis that they are precluded by the so-called "gist of the action" doctrine. The gist of the action doctrine essentially precludes the re-casting of a breach of contract claim into a tort claim. *See e-Toll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 13 (Pa. Super. Ct. 2002). It prohibits tort claims where the defendant's duties essentially flow from an agreement between the parties. *Bealer v. Mut. Fire, Marine and Inland Ins. Co.*, 2005 WL 1819971, at *4 (E.D. Pa. Aug. 1, 2005). Here, however, Plaintiff has not asserted, nor could it, a breach of contract claim against Defendant North Star since no contractual relationship exists between these two parties.

16

Therefore, Defendant North Star has no basis to assert the gist of the action doctrine. *See Centimark Corp. v. Pegnato & Pegnato Roof Mgmt., Inc.,* 2008 WL 1995305, at *13-14 (W.D. Pa. May 6, 2008) (holding that individual defendants could not invoke the gist of the action doctrine to bar conversion claim against them individually because they, as individuals, were not party to the contract with plaintiff); *Levert v. Philadelphia Int'l Records,* 2005 WL 2271862, at *3 (E.D. Pa. Sept. 16, 2005) (noting that the fact that the defendant was not in a contract with the plaintiff bars both plaintiff's breach of contract claims against him, as well as defendant's invocation of the gist of the action doctrine to bar the tort claims); *Fleet Nat'l Bank v. Boyle,* 2005 WL 2455673, at *11 (E.D. Pa. Sep. 12, 2005) (noting that defendants had failed to cite to any authority for the notion that they, as non-parties to the contract at issue, could invoke the gist of the action doctrine to bar the tort claims against them); *Penn City Invs., Inc. v. Soltech,* 2003 WL 22844210, at *3 (E.D. Pa. Nov. 25, 2003). Accordingly, Defendant North Star's motion to dismiss Counts Five and Six is denied.

### *Count Four – Unjust Enrichment*

At Count Four, Plaintiff asserts a claim for unjust enrichment. Defendant North Star seeks dismissal of this claim on the basis that Plaintiff has failed to plead a legally protectable "trade secret." In making this argument, Defendant North Star relies upon the argument, previously rejected above, that Plaintiff has failed to plead the existence of a protectable "trade secret" or "confidential information." As concluded above, Plaintiff has sufficiently pled the existence of both trade secrets and confidential information. Accordingly, Defendant North Star's motion to dismiss Count Four on this basis is denied.

**CONCLUSION**

For the reasons stated herein, this Court finds the forum-selection clause in the Employment Agreement between Plaintiff and Defendant Hopkins is valid and enforceable. Because this enforceable forum selection clause provides for venue *only* in the state courts of Missouri, this matter cannot and will not be transferred. Rather, the claims against Defendant Hopkins *only* are dismissed. The motion to dismiss as brought by Defendant North Star is denied. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C., J.